UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CATHLEEN MCNA,**

        **Plaintiff,**

-vs-                                             Case No. 6:07-cv-1906-Orl-19KRS

**COMMUNICATIONS INTER-LOCAL
AGENCY, DAVID B. BUBB, JIM COX,**

        **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion of Defendants to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 21, filed Jan. 10, 2008); and

2. Response of Plaintiff to Defendants' Motion to Dismiss (Doc. No. 27, filed Feb. 6, 2008).

## Background

Plaintiff Cathleen McNa has filed a six count complaint against Defendants Communications Inter-Local Agency ("CIA"), David B. Bubb, and Jim Cox. (Doc. No. 19, filed Dec. 31, 2007.) She alleges that Defendants have violated the Florida Civil Rights Act (Count I), the Americans with Disabilities Act (Counts II and V), the Age Discrimination in Employment Act (Counts III and VI), and 42 USC section 1983 (Count IV). Defendants now move for dismissal of Counts II, III, IV, V, and VI. (Doc. No. 21 at 2.)

CIA is an interlocal agency which provides emergency communications for the cities of Port Orange, New Smyrna Beach, and Edgewater. (Doc. No. 19 at ¶ 20.) The Complaint alleges that

McNa began working as an emergency dispatcher for CIA in December of 2003. (*Id.*) In her mid-fifties, McNa was one of the oldest employees in the center. (*Id.* at ¶¶ 9, 23.)

In April of 2005, a relatively new Operations Manager, Defendant Bubb, gave McNa a two-day suspension for allegedly misusing a messaging system, even though the younger co-worker with whom she was communicating received only a verbal warning. (*Id.* at ¶ 25.)[1] Around the same time, McNa also began noticing that she was the target of age-related derogatory comments by her co-workers. (*Id.* at ¶ 29.) She complained to her immediate supervisor about the comments. (*Id.* at ¶¶ 30-32.)

Within several months, McNa began noticing comments about her mental health. (*Id.* at ¶¶ 33-34.) McNa alleges that she suffers from diagnosed anxiety and bouts of depression. (*Id.* at ¶¶ 33-36.) However, with medicine, McNa can perform her job as a dispatcher. (*Id.*) She alleges that these diagnoses "substantially limited one or more major life activities." (*Id.* at ¶ 37.) McNa again complained of the discrimination to her immediate supervisor, as was required by CIA policy. (*Id.*)

At one point, Defendant Cox, the Operations Manager, told McNa to go home because he was concerned that her illness might affect her work performance. (*Id.* at ¶ 47.) He claimed that the agency could not afford the potential liability posed by her illness, that she was "mentally ill," and she "should leave this job and go work at Wal-Mart with the rest of the retards." (*Id.*)

After this confrontation, McNa informed the EEOC and the Florida Commission on Human Relations that she had been discriminated against because of her age and disability.[2] (*Id.* at ¶ 49.)

---

[1] McNa observed other younger employees misuse the messaging system, including Bubb. (*Id.* at ¶ 28.)

[2] McNa told the agency about her concerns of age discrimination, but these allegations were not included in the form which was prepared by the agency. (*Id.*)

Later, she made a request to CIA to be enrolled in its "employee assistance program" and receive accommodation for her disability. (*Id.* at ¶ 51.) She also requested a shift change or transfer to avoid the "open hostilities." (*Id.* at ¶¶ 52, 55.) CIA denied both requests. (*Id.* at ¶¶ 51-52, 55.)

Several months later, McNa was again accused of misusing the instant messaging system. (*Id.* at ¶ 56.) Her supervisors called her into a meeting to discuss the allegation. (*Id.* at ¶ 60.) Although company policy gave McNa the right to present witnesses on her own behalf and cross-examine adverse witnesses, she was not permitted to see the evidence or regulations upon which CIA was relying. (*Id.* at ¶¶ 60-63.) Following the meeting, CIA terminated her for the alleged misuse of the instant messaging system. (*Id.* at ¶¶ 62-68.)

**Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that can be drawn from the complaint. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 12(d); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).

**Analysis**

**I.      Count II**

Defendants first argue that Count II of the Amended Complaint must be dismissed because McNa has failed to allege facts sufficient to establish that she was "disabled." (Doc. No. 21 at 4.) Specifically, Defendants argue that McNa has not demonstrated that she was "substantially limited in a major life activity." (*Id.*) Rather, Defendants contend she states in conclusory fashion that her depression and anxiety have "substantially limited one or more major life activities." (*Id.* at 4 (quoting Doc. No. 19 at ¶ 80).)

Under the ADA, the term "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2). The individual must either possess "a record of having" or be "regarded as having" the physical or mental impairment. *Id.*; *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004). For an impairment to substantially limit the major life activity of "working," the condition "must significantly restrict . . . the ability to perform either a class of jobs or a broad range of jobs in various classes . . . ." *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1133, *amended in part by*, 102 F.3d 1118 (11th Cir. 1996) (alterations in original).

McNa's allegation that her anxiety and depression "substantially limited one or more major life activities" is purely a legal conclusion. However, the facts alleged in her complaint are sufficient to infer that McNa's supervisors, Bubb and Cox, perceived McNa as possessing a mental impairment that limited the major life activity of working. For example, Cox allegedly told McNa to "go work at Wal-Mart with the rest of the retards," implying that she was only suited for work that could be performed by a mentally retarded person. (Doc. No. 19 at ¶ 47.) Thus, McNa has

sufficiently alleged the impairment of a major life activity. *See Caruthers*, 357 F.3d at 1216 ("Under the 'regarded as' prong, a person is 'disabled' if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception.")

## II.     Count III

Defendants next argue that Count III must be dismissed because McNa fails to show that she suffered any "adverse employment action" because of her age. (Doc. No. 21 at 8.) A plaintiff pursuing an ADEA claim must demonstrate that she suffered an "adverse employment action." *Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008). "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Id.* (internal quotations and citations omitted).

McNa alleges that she was twice reprimanded because of her age. (Doc. No. 19 at ¶¶ 25, 56-58.) The first reprimand resulted in a two-day suspension, and the second reprimand resulted in her termination. (*Id.*) It is reasonable to infer that these actions altered McNa's compensation, impacted the "terms, conditions, or privileges of employment," and affected her "status as an employee." *Van Voorhis,* 512 F.3d at 1300. Accordingly, she has pled an adverse employment action.

## III.    Count IV

Defendants next argue that Count IV must be dismissed because the ADA provides an exclusive remedy for the deprivation of rights created by the ADA. (Doc. No. 21 at 10.) Defendants also argue that the section 1983 claims against Bubb and Cox in their individual capacities must be dismissed because they are entitled to qualified immunity. (Doc. No. 21 at 11-12.)

### A. The ADA and ADEA as Exclusive Remedies

In relevant part, Plaintiff's section 1983 count alleges:

> 96. As a result of Defendants' continued pattern, practice and custom of discrimination, McNa failed to enjoy equal rights under the law.
> . . .
> 101. Plaintiff McNa has a constitutionally protected right to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution and made enforceable through 42 U.S.C. § 1983.
> . . .
> 106. The Defendants have a custom, policy or practice of treating disabled employees differently from non-disabled and treating older employees less favorably because of their age . . [sic] This custom, policy or practice was a proximate cause of McNa's injuries.

(Doc. No. 19 at ¶¶ 96, 101, 106.) Section 1983 provides a remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Thus, an essential component of any section 1983 claim is to demonstrate an underlying violation of federal law. *Id.*; *Monroe v. Pape*, 365 U.S. 167, 171 (1960). Fairly read, McNa's section 1983 claim alleges underlying violations of the Equal Protection Clause, the ADA, and the ADEA.

Although section 1983 is worded broadly, it is also subject to a myriad of judicially-created exceptions.[3] One such exception was created by a line of Supreme Court cases holding that specific enforcement provisions in other federal statutes reveal Congress' intent to foreclose the availability of more general remedies under section 1983. *See, e.g.*, *Middlesex County Sewarage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19-21 (1981); *Smith v. Robinson*, 468 U.S. 992, 1009 (1984). Consistent with this reasoning, the Eleventh Circuit has held that the comprehensive remedial framework of the ADA forecloses an action under section 1983 based solely on rights created by the ADA. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997). The Eleventh

---

[3] *See generally*, Erwin Chemerinsky, *Federal Jurisdiction* 463-587 (4th ed. 2003).

Circuit has not opined whether the ADEA similarly forecloses a section 1983 claim based on rights created by the ADEA, but several other Circuit and District Courts have answered this question in the affirmative. *LaFleur v. Tex. Dep't of Health*, 126 F.3d 758, 759-60 (5th Cir. 1997); *Zombro v. Balt. City Police Dep't*, 868 F.2d 1364, 1367 (4th Cir. 1989); *Ring v. Cris County Hosp. Auth.*, 652 F. Supp. 477, 482 (M.D. Ga. 1987). *But see Hornfeld v. City of N. Miami Beach*, 29 F. Supp. 2d 1357, 1369 (S.D. Fla. 1998), *rev'd in part*, 208 F.3d 1010 (11th Cir. 2000) (unpublished table decision). The reasoning in these cases echo the Court's opinion in *Holbrook*, suggesting that the Eleventh Circuit would reach the same result if presented with the issue today. Thus, McNa may not maintain a section 1983 claim to the extent that she bases the claim on underlying violations of the ADA or ADEA.[4]

McNa's complaint also alleges violations of the Equal Protection Clause. *Holbrook* did not decide whether a plaintiff alleging disability discrimination may simultaneously proceed under section1983 for constitutional claims relating to the same discrimination. *See Holbrook*, 112 F.3d

---

[4] McNa argues that *Holbrook* does not apply when the plaintiff alleges a "municipal pattern or practice or custom" of discrimination rather than a claim of individual discrimination. (Doc. No. 27 at 10.) In support, she cites an Eleventh Circuit case which permitted the plaintiff to pursue remedies under both section 1983 and Title VII for the same discriminatory acts. (*Id.* (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir. 2000).) McNa's argument fails in two respects. First, alleging a custom, pattern, or practice of discrimination is a pre-requisite to establishing municipal liability under section 1983. *Cook ex. rel Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1115-16 (11th Cir. 2005). Since the plaintiff in *Holbrook* sued a municipality, the Eleventh Circuit was most likely presented with a case where the plaintiff alleged a custom, pattern, or practice of discrimination. *Holbrook*, 112 F.3d at 1530. Moreover, McNa does not offer any explanation of how or why an allegation of custom, pattern, or practice would affect the reasoning in *Holbrook*. Finally, McNa's citation to case law permitting simultaneous section 1983 and Title VII claims is unavailing, as it has long been the law in this Circuit and others that the rule established by *Nat'l Sea Clammers Ass'n* does not apply to Title VII. *Johnson v. City of Ft. Lauderdale*, 148 F.3d 1228, 1231 (11th Cir. 1998); *see also Cross v. State of Ala.*, 49 F.3d 1490, 1507 (11th Cir. 1995).

at 1531. Other courts examining this question have concluded that the ADA and ADEA provide the exclusive remedy for constitutional claims relating to the types of discrimination prohibited by the acts. *Zombro*, 868 F.2d at 1367 (ADEA); *Ring*, 652 F. Supp. at 482 (ADEA); *Vicenty Martell v. Estado Libre Asociado de Puerto Rico*, 48 F.Supp. 2d 81, 90-91 (D.P.R.1999) (ADA). However, resolving this question is unnecessary in the instant case because McNa's 1983 claim would fail even if she were permitted to base the claim on an underlying violation of the Equal Protection Clause. Critically, McNa has not plead facts sufficient to establish that Defendants lacked a rational basis for the alleged discrimination. *See Tennessee v. Lane*, 541 U.S. 509, 540 (2004) ("[T]he Equal Protection Clause permits a State to classify on the basis of disability so long as it has a rational basis for doing so."); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83-84 (2000) ("States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest.") Quality performance of municipal services is a legitimate state interest, and Bubb and Cox's concern that McNa's age and mental illnesses would interfere with her performance may have been a rational reason to terminate her. *See*, *e.g.*, *Silvertein v. Gwinnett Hosp. Auth.*, 672 F. Supp. 1444, 1448 (N.D. Ga. 1987) (state hospital had legitimate state interest in providing quality service).

      In her response to Defendants' motion, McNa asserts that she had a procedural due process right to a hearing before she was terminated. (Doc. No. 27 at 10.) However, no hint of this claim appears in her section 1983 count. (Doc. No. 19 at ¶¶ 95-107.) The only discussion of McNa's right to a hearing appears in the general factual background section of the Second Amended Complaint, where she alleges that she was denied the opportunity to confront witnesses at a pre-termination hearing. (*Id.* at ¶¶ 60-63.)   By contrast, her section 1983 count alleges violations of equal

protection, the ADA, and the ADEA. Accordingly, to the extent McNa is asserting a procedural due process claim, she fails to meet the pleading requirements of Federal Rules of Procedure 8(a) and 10(b) which "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir.1996). Tellingly, Defendants' "responsive pleading" did not even identify the existence of a procedural due process claim, nor could the Court discern such a claim from the manner in which the Second Amended Complaint is drafted.

Thus, McNa has not plead an underlying violation of federal law and therefore fails to state a claim under section 1983.

### B.  Qualified Immunity

Because the section 1983 claims against Bubb and Cox fail to state a claim upon which relief can be granted, it is unnecessary to consider whether qualified immunity applies.

## IV.  Counts V and VI

Finally, Defendants argue that Counts V and VI are duplicative because the counts allege that the same termination which forms the basis of Counts II and III also constituted retaliation. This argument is inconsistent with the rules governing pleading in federal court. A common set of facts often form the basis for multiple causes of action. *See*, *e.g.*, *Perez v. Pavex Corp.*, No. 8:01-CV-69-T-27MSS, 2008 WL 348803, *1-8 (M.D. Fla. Feb. 7, 2008) (denying summary judgment where plaintiff asserted a discrimination and retaliation claim for the same termination). Moreover, the Federal Rules of Procedure permit litigants to plead alterative theories of recovery on one set of facts. Fed. R. Civ. P. 8(a)(3).

**Conclusion**

The Motion of Defendants to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 21, filed Jan. 10, 2008) is **GRANTED** in part and **DENIED** in part.  Count IV is **DISMISSED** without prejudice.  All other counts remain pending before the Court.  Plaintiff has ten (10) days to submit a Third Amended Complaint which complies with this Order.  Should Plaintiff elect not to file a Third Amended Complaint, this action will proceed on the complaint currently before the Court except as stated in this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 12___, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record